**In re Viola Carolyn LUCAS, also known as Carolyn Lucas, Debtor.**

**Orvey R. Cousatte, Administrator of the Estate of Imogene Collier, Plaintiff–Appellant,**

**v.**

**Viola Carolyn Lucas, Defendant–Appellee.**

**BAP No. KS–02–088.**
**Bankruptcy No. 01–12092–7.**
**Adversary No. 01–5116.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Oct. 20, 2003.

Submitted on the briefs: *

Richard V. Foote, Richard V. Foote P.A., Wichita, KS, for Plaintiff–Appellant.

Russell W. Davisson, Wichita, KS, for Defendant–Appellee.

Before McFEELEY, Chief Judge, BOHANON, and MICHAEL, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Orvey R. Cousatte, Plaintiff/Appellant ("Cousatte") appeals a judgment by the United States Bankruptcy Court for the District of Kansas. Cousatte argues that the bankruptcy court erred when it dismissed his Complaint that a state court judgment debt was nondischargeable under 11 U.S.C. § 523(a)(4).[1] Alternatively, Cousatte argues that the bankruptcy court erred when it did not consider the issue of whether a Kansas state court finding of undue influence created a constructive trust. We affirm on the first issue and remand on the second issue.

### I. Background

Imogene Collier ("Collier") was a reclusive elderly woman who was characterized

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal, and therefore grants Appellant's construed request for a decision on the briefs without oral argument. See Fed. R. Bankr.P. 8012. The case is therefore submitted without oral argument.

1. All future statutory references are to Chapter 11 of the United States Code unless otherwise noted.

as mentally slow. For most of her life, her sister and her sister's husband cared for her. After their deaths, Collier lived alone. A neighbor, Viola Carolyn Lucas, Debtor/Appellee ("Debtor") befriended Collier and began to assist her in her daily needs. Subsequently, on October 10, 1996, Collier executed the Imogene Collier Revocable Trust ("Trust") funded with all of her assets. The Trust named Collier and the Debtor as Co–Trustees of the Trust. Collier's will was also revised so that upon Collier's death all of her assets would become the property of the Trust. After Collier's death the Debtor became its sole beneficiary. Collier died on February 19, 1997, leaving assets of approximately $150,129.83.

Cousatte was the half-brother of Collier and became the administrator of her estate. On March 12, 1997, Cousatte brought a civil action in state court against the Debtor alleging undue influence in the making of the Trust and will. Cousatte asked for an accounting, and a finding that the Trust and will were void. After a trial, although the state court found that there were suspicious circumstances surrounding the making of the Trust and will, it found that Cousatte had not met his burden in proving undue influence and ruled in favor of the Debtor. The state court entered a journal entry of judgment on January 21, 1998 ("first state court judgment"). Cousatte appealed the first state court judgment. He did not obtain a supersedeas bond or ask for a stay pending appeal.

After the entry of the judgment in her favor, the Debtor sold Collier's house. The Debtor also cashed out some of the other Trust assets and used the monies in various real estate transactions, ultimately culminating in the purchase of a "new" home and car. During this time, a dispute between the Debtor and her attorney over the funds owed him from his representation of her in the undue influence matter was resolved in state court, the state court ruling that the Debtor owed her attorney $38,000. The Debtor paid her attorney from the Trust funds. Ultimately, during the period between the entry of the state court judgment and the resolution of the appeal, the Trust was liquidated.

On January 21, 2000, the state appellate court reversed the trial court and remanded the matter to the trial court, ruling that the trial court had improperly placed the burden on Cousatte to establish undue influence after Cousatte had established suspicious circumstances.[2] Upon remand, without further hearing, the state court entered a journal entry of judgment dated July 27, 2000, finding that the Debtor had not met her burden of rebutting the finding of suspicious circumstances and therefore, the Trust and will had been obtained by the Debtor's undue influence and were void ("second state court judgment"). The state court reinstated Cousatte as administrator of Collier's estate. The state court further ordered the Debtor to turn over all of Collier's property and its proceeds to Cousatte and settled title to the Collier house in Cousatte. The Debtor appealed this decision. On March 1, 2002, the Kansas Court of Appeals affirmed the second state court judgment.

The Debtor filed under Chapter 7 of the Bankruptcy Code on May 7, 2001. Cousatte commenced this adversary proceeding on June 4, 2001. On June 6, 2001, Cous-

---

**2.** The Kansas Court of Appeals found that under Kansas law, if an individual is in a fiduciary relationship with another and suspicious circumstances are found to exist with respect to a particular transaction, there is a presumption of undue influence, which shifts the burden of proof to the beneficiary of the transaction who must then rebut that presumption.

atte filed an Amended Complaint alleging that a debt was nondischargeable under § 523(a)(4) and (a)(6). Cousatte asked for findings that the debt was nondischargeable and for a lien on property the Debtor had purchased with the Trust funds.[3] After a trial, in a judgment filed on December 5, 2002, the bankruptcy court found that Cousatte had not met his burden under §§ 523(a)(4) or (a)(6).

There were two time periods at issue in the court's careful evaluation of whether the debt was nondischargeable: the Debtor's conduct when the undue influence occurred; and the Debtor's conduct following the first trial. With respect to the former, the bankruptcy court examined whether the elements of collateral estoppel had been met by the state court proceeding and determined the following: (1) there was no identity of issues because in the state court proceeding undue influence had been established only because the Debtor had not met her burden of rebutting the presumption that arose upon the showing of suspicious circumstances; and (2) in the state court proceeding, there had been no factual findings of fraud. The bankruptcy court further found that Cousatte also had not presented it with any evidence that during the events preceding Collier's death or the events subsequent to her death, the Debtor had anything but a general fiduciary duty to Collier.

With respect to the events occurring after Collier's death, the bankruptcy court found that Cousatte could not establish embezzlement under § 523(a)(4) because when the Debtor spent the Trust fund assets, she had a valid court judgment permitting her to do so. The court found that there was no evidence of a willful injury under § 523(a)(6) to the property or to Cousatte, who had not been a beneficia-

ry under either will. The bankruptcy court concluded that because it had ruled against Cousatte on the §§ 523(a)(4) and (a)(6) issues, it was "unnecessary to reach the constructive trust issue" and dismissed the Complaint.

This appeal timely followed.

## II. *Appellate Jurisdiction*

■ The Bankruptcy Appellate Panel has jurisdiction over this appeal. An order finding a debt dischargeable is a final order. Appellant timely filed a notice of appeal. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Kansas. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## III. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R. Bankr.P. 8013.

■ We review the bankruptcy court's legal determinations de novo and its factual findings for clear error. *See Osborn v. Durant Bank & Trust Co. (In re Osborn),* 24 F.3d 1199, 1203 (10th Cir. 1994). The determination of the nondischargeability of debt is an issue of law that we review de novo. *United States v. Victor,* 121 F.3d 1383, 1386 (10th Cir.1997).

---

**3.** On her schedules, the Debtor claimed both the house and the car as exempt. There is no

evidence that Cousatte timely objected to these exemptions.

## IV. *Discussion*

■ Cousatte argues that the bankruptcy court erred when it found that his claim did not meet the criteria for nondischargeability under § 523(a)(4). He divides his argument on appeal into four points.[4] However, these points can be condensed into two arguments. First, Cousatte argues that because there was an appeal after the first state court trial there was no valid judgment until the resolution of the appeal. Based on this premise, he argues that when the Debtor spent the assets of the Trust pending the appeal, she embezzled the funds, making the debt nondischargeable under § 523(a)(4).[5] Alternatively, Cousatte argues that the debt was nondischargeable under § 523(a)(4) because once the state trial court voided the will and Trust, the Debtor held the assets in a constructive trust. We will address each argument accordingly.

■ Section 523(a)(4) provides that a Chapter 7 debtor is not discharged from any debt resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." 11 U.S.C. § 523(a)(4). Under § 523(a)(4), embezzlement will have occurred when there is a " 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive

fraud.' " *Driggs v. Black (In re Black),* 787 F.2d 503, 507 (10th Cir.1986) (quoting *United States Life Title Ins. Co. v. Dohm (In re Dohm),* 19 B.R. 134, 138 (N.D.Ill. 1982) (further quotation omitted)), *overruled on other grounds by Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The burden of proof is on the creditor to establish by a preponderance of the evidence that the debt is nondischargeable. *Grogan,* 498 U.S. at 291, 111 S.Ct. 654.

■ The bankruptcy court found that Cousatte could not establish embezzlement under § 523(a)(4) because when the Debtor spent the Trust fund assets, she had a valid court judgment permitting her to do so. Cousatte argues that this finding was in error because the first state court judgment was not final and so the Debtor never had the authority to spend the funds. This argument finds no support in Kansas law.

A final judgment under Kansas law is one that "is the final determination of the rights of the parties in an action." Kan. Stat. Ann. § 60–254(a) (2002). As explained by the Kansas statute, a judgment will not be final only when there are multiple claims that have not all been resolved:

[A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the par-

---

**4.** Cousatte's four points are as follows: (1) whether the Debtor had a valid judgment when the judgment was on appeal; (2) whether the Debtor committed embezzlement or larceny when she spent the trust fund assets; (3) whether Cousatte should have been permitted to trace the Trust assets; (4) whether Cousatte's claim was a debt or an action to recover assets of the Trust. Appellant's Brief at 1.

**5.** In this appeal, Cousatte references § 523(a)(6), which makes debts nondischarge-

able "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). However, Cousatte makes no specific argument as to why the bankruptcy court erred under this section. Additionally, Cousatte appears to have given up any claim that the monies are nondischargeable under the fraud or defalcation portion of § 523(a)(4). Therefore, we will deem these arguments abandoned.

ties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Kan. Stat. Ann. § 60–254(b) (2002). Although Cousatte claims that the first state court judgment was not final, he has pointed to nothing in the record that indicates either that there were multiple claims in the state court proceeding or that if there were multiple claims, the first state court judgment did not resolve all of them. In the absence of any such evidence, by definition, the first state court judgment was final.

■ Next, Cousatte contends that the action was not final because it was on appeal, citing *Gugenhan v. Blue Valley National Bank (In re Gugenhan)*, 55 B.R. 507 (Bankr.D.Kan.1985), for this proposition. This case is not analogous. The issue in *Gugenhan* was whether third parties could obtain an interest in real property under the Kansas lis pendens statute while a foreclosure action was pending.

In *Gugenhan*, at the conclusion of a state foreclosure trial, a state court ruled that when two mortgages had been properly recorded but improperly executed, the mortgage holders had equitable mortgages on the subject property. *Id.* at 508. The

state court reserved judgment on the debtor's counterclaims that the mortgages violated the Truth–in–Lending Act, and this issue had not been decided when the debtors filed a petition under Chapter 11 of the Bankruptcy Code. *Id.* Subsequently, the debtors sought to avoid the equitable mortgages under the bankruptcy code, as statutory liens, judicial liens, or transfers that would be avoidable by bona fide purchasers of property under §§ 545, 522(f)(1), or 544(a)(3). *Id.* The bankruptcy court held that under the Kansas lis pendens statute, Kan. Stat. Ann. § 60–2201 (2002),[6] no third parties, including a trustee, could achieve bona fide purchaser status while a state foreclosure action is on appeal. *Id.* at 509. Additionally, the bankruptcy court found that there was not a conclusive final judgment as defined by Kansas law under § 60–254(a) because the state court had reserved judgment on the defendant's counterclaims. *Id.*

This case is not like *Gugenhan.* While it may be true that under the Kansas lis pendens statute, a third party could not have obtained valid title to any real estate awarded the Debtor in the state court suit until the resolution of an appeal,[7] there is no legal authority for the proposition that in the absence of a stay pending appeal the Debtor could not take any action with regard to the subject property.[8] The lis

---

**6.** This statute provides:

> (a) When a petition has been filed in the district court pursuant to chapter 60 of the Kansas Statutes Annotated, the action is pending so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's claim ....

Kan. Stat. Ann § 60–2201 (2002).

**7.** At some time prior to this appeal, Cousatte brought a quiet title action against the purchaser of Collier's real estate, seeking to set

aside the transfer of the property from the Debtor to the purchaser. The Kansas state district court found that the lis pendens statute applied and set aside the transfer. Subsequently, the Kansas Court of Appeals reversed, finding, among other things, that lis pendens did not apply because Cousatte had not sufficiently described the subject real estate in his 1997 state court petition. *Cousatte v. Collins*, 31 Kan.App.2d 157, 61 P.3d 728, 732 (2003).

**8.** In his brief, Cousatte also argues that the judgment was not final pending appeal because the petition in state court was an action

pendens statute gives a creditor a cause of action against a subsequent purchaser with notice; however, it does not give a party a separate cause of action after a reversal on appeal against the party who obtained the initial state court judgment.

Alternatively, Cousatte argues that the final state court judgment created a constructive trust with respect to any Trust funds or traceable assets purchased with Trust fund assets.[9] The bankruptcy court found that it did not need to address the constructive trust issue as it had found that the debt was dischargeable. We disagree with the bankruptcy court. Whether property is held in a constructive trust is a separate issue from whether a debt is nondischargeable under § 523(a). Property held by the debtor for another in a constructive trust is not a debt owed by the debtor. Property held in constructive trust would not be part of the bankruptcy estate.

The initiation of a bankruptcy case creates an estate that includes all legal and equitable interests of the debtor in property as of the date of the filing of the petition. 11 U.S.C. § 541(a). However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property

that the debtor does not hold." 11 U.S.C. § 541(d). Under this section, property subject to a trust is not property of the estate because the debtor does not hold an equitable interest in property he holds in trust for another. *See Cunningham v. Brown*, 265 U.S. 1, 11, 44 S.Ct. 424, 68 L.Ed. 873 (1924); *Jobin v. Youth Benefits Unlimited (In re M & L Bus. Mach. Co. Inc.)*, 59 F.3d 1078, 1081 (10th Cir.1995). The Tenth Circuit has concluded that under § 541(d) property that a debtor holds prepetition in a constructive trust does not enter the estate. *Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 926 (10th Cir.2001); *see also Poss v. Morris (In re Morris)*, 260 F.3d 654, 670 (6th Cir.2001) (same); *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 104 F.3d 293, 295 (9th Cir. 1997) (same); *Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. (In re Columbia Gas Sys.)*, 997 F.2d 1039, 1059 (3d Cir.1993) (same). However, a creditor cannot simply claim entitlement to a constructive trust. State law determines whether the requirements of a constructive trust have been met. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Cousatte argues that the Debtor held her home and her car in constructive trust under Kansas law pursuant to the Kansas state court judgment entered after the remand from the appellate court.[10] When

---

in replevin. Kansas details the requirements for an action in replevin in § 60–1005. The statute delineates specific requirements for such an action, requiring, among other things, notice and a hearing. Kan. Stat. Ann. § 60–1005(b) (2002). We can find no basis in the record for Cousatte's argument that his initial complaint, which alleged undue influence in the making of a will or trust, was a replevin action.

9. Cousatte argues that the Trust held in total $150,129.23; of that amount he claims that

$77,273.06 is traceable to the Debtor's residence at 2803 N. Bellwood, Wichita, Kansas, and $8,000 to a 1999 Ford Taurus purchased by the Debtor.

10. Although his argument is somewhat confusing, Cousatte appears to contend that the state court finding of undue influence establishes that the Debtor held the monies from the Trust in constructive trust and the bankruptcy court was collaterally estopped from determining otherwise. In the absence of any findings from the bankruptcy court on this

the bankruptcy court determined that it did not need to address the issue of whether a constructive trust had been imposed because the debt was dischargeable, it appears to have summarily determined by implication that there was no constructive trust. This was in error.

We observe that the issue of whether state law has imposed a prepetition constructive trust is one that would not ordinarily arise in a nondischargeability proceeding because such a proceeding presumes that there is a debt that may or may not be discharged. However, once this issue has been raised, a bankruptcy court cannot summarily dismiss it on the grounds that the debt is dischargeable. Accordingly, we remand so that the bankruptcy court may either resolve the constructive trust issue with further findings, or, if it determines that the issue is not properly before it, dismiss it without prejudice.

### V. *Conclusion*

For the reasons set forth above, the bankruptcy court's judgment is AFFIRMED in its findings that Cousatte's claim does not meet the criteria for nondischargeability under § 523(a)(4). With respect to whether the Debtor holds any property in constructive trust, we REMAND to the bankruptcy court for further findings consistent with this opinion.

issue, we find it premature to consider this      argument.